UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

BELINDA STOUGH,                          :
                                         :
     Plaintiff,                          :
                                         :
v.                                       :     CASE NO. 3:05cv421-W
                                         :
JAMESON INNS, a company                  :
owned or operated by                     :
KITCHIN HOSPITALITY, LLC,                :
                                         :
     Defendant.                          :

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PORTIONS OF PLAINTIFF'S AMENDED COMPLAINT BASED
ON FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

I.   Introduction

Defendant Jameson Inns ("Jameson" or "Defendant"), by and
through its undersigned counsel, has respectfully moved the
Court to dismiss Paragraphs 4, 7, 8, and 20 of Plaintiff's First
Amended Complaint because Plaintiff failed to exhaust her
administrative remedies with the Equal Employment Opportunity
Commission ("EEOC") in regard to the allegations contained
therein.   Defendant submits that this motion is due to be
granted based on the long-standing law in this Circuit of
Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir.
1970), and the recent Eleventh Circuit decisions of Lambert v.
Alabama Dept. of Youth Services, 150 Fed. Appx. 990 (11th Cir.
2005) (attached as Exhibit 1 hereto) and Green v. Elixir

1

<u>Industries, Inc.</u>, 152 Fed. Appx. 838 (11th Cir. 2005) (attached as Exhibit 2 hereto).

As set forth below, several of the Complaint allegations in Plaintiff's original Complaint and her First Amended Complaint, filed December 3, 2005, allege conduct by Jameson and its management which substantially exceeds the scope of the allegations raised by Plaintiff in her original EEOC charge signed by Plaintiff on August 9, 2004.

Jameson contends that Plaintiff's "expanded" allegations, raised in her original and Amended Complaint, should be dismissed pursuant to the <u>Sanchez</u> doctrine because Plaintiff failed to exhaust her administrative remedies regarding these allegations with the EEOC.

At the risk of confusing what should be a non-complex issue, the following summary chart is provided in order to clearly delineate Plaintiff's "expanding" claims between August 2004 and the present:

2

COMPARING ALLEGATIONS OF COMPLAINT OF MAY 6, 2005 AND
AMENDED COMPLAINT FILED DECEMBER 3, 2005
WITH EEOC CHARGE OF AUGUST 9, 2004

| Amended Complaint (December 3, 2005) | Original Complaint (May 6, 2005) | EEOC Charge Allegations (August 9, 2004) |
|---|---|---|
| 1. Discriminatory salary and wages as compared to General Managers at Jameson (¶¶ 7,10,11,12,20) | 1. Discriminatory salary and wages as compared to one Assistant General Manager, Mark Fetner (Count I, ¶ 3) | 1. Discriminatory salary as compared to one Assistant General Manager, Mark Fetner |
| 2. Discriminatory wages, discipline, evaluations, inspections, termination, et al. (¶¶ 7, 20) | 2. Not in original Complaint | 2. Neither alleged in EEOC charge nor investigated |
| 3. Hostile work environment (¶ 8) | 3. Hostile work environment (Count I, ¶ 4) | 3. Neither alleged in EEOC charge nor investigated |
| 4. Sexually discriminatory comments, touching and other actions ¶ 8) | 4. Not in original Complaint | 4. Neither alleged in EEOC charge nor investigated |
| 5. Retaliatory termination (¶ 25) | 5. Retaliatory termination (¶ 3) | 5. Retaliatory termination alleged in EEOC charge |

As set forth below, Defendant contends that unless the allegation was alleged in the EEOC charge or investigated by the EEOC, Plaintiff cannot assert these claims for the first time in her Complaint.

## II.  Factual Background

### 1.  Plaintiff's EEOC Allegations

Plaintiff Belinda Stough, the former General Manager at Jameson Inn in Alexander City, Alabama, was terminated on February 18, 2004.  On the 170th day after her termination, on August 9, 2004, Belinda Stough declared under penalty of perjury that the following allegations of sex discrimination and retaliation were "true and correct":[1]

> My name is Belinda Stough and I am a female who served as General Manager of the Jameson Inn of Alexander City, Alabama until February of 2004. During early February of 2004, an Assistant Manger [sic] was hired to assist me in the operation of Jameson Inn were [sic] I served a [sic] General Manager. After he had been employed for approximately two weeks, I discovered that the Assistant Manager had been hired and had begun work at a salary equal to what I was being paid after having worked for the company for four years and even though I was the Assistant Managers Supervisor and Superior.
>
> When I complained to the District Manager of this disparity and what I considered to be discrimination an [sic] the basis of my sex on February the 18th 2004, I was terminated

---

[1] It is unclear when the charge was actually filed and whether it was filed within 180 days of Plaintiff's termination.

> from employment in retaliation for my having
> made a complaint about disparity in pay on
> the basis of my sex.

The EEOC charge form asked for the "earliest" and the "latest" dates of discrimination; Plaintiff listed February 18, 2004. (See Plaintiff's EEOC Charge attached as Exhibit 3).

When Plaintiff filed her charge in August 2004, she was represented by legal counsel, E. Paul Jones, an attorney in Alexander City, Alabama. In her deposition, Ms. Stough claimed that she told Mr. Jones of the numerous instances of alleged discrimination which occurred prior to February 18, 2004, but admitted that she signed the EEOC charge on August 9, 2004 without any of these alleged additional claims. (Stough Dep., p. 25, l. 11 – p. 35, l. 14) (attached as Exhibit 4 hereto).

There is nothing in the documents produced by the EEOC which contains any letters or memos from either Ms. Stough or her attorney regarding any claims of discrimination other than those contained in Ms. Stough's August 9, 2004 EEOC charge.

### 2. The EEOC Investigation Did Not Exceed The Scope Of The Charge

On August 18, 2004, the EEOC sent its Notice Of Charge Of Discrimination (Jameson-0265) and requested that Jameson provide by September 18, 2004 "a statement of your position on the issues covered by this charge . . . ." (See ¶3 of Notice Of

Charge Of Discrimination)(emphasis added) (attached as Exhibit 5 hereto).

Kitchin Hospitality, LLC's legal and general counsel, Steven A. Curlee, sent his statement of position to the EEOC in Birmingham, Alabama on December 12, 2004. (Exhibit 6). In his response, Mr. Curlee addressed the issues raised by Plaintiffs' EEOC charge: Plaintiff's compensation complaint that she was earning the same salary as her Assistant General Manager (p. 2), and her retaliatory termination (p. 3). Since those were the only allegations raised by Plaintiff in her EEOC charge and the EEOC asked for a response dealing only with those issues, no other issues were addressed by Kitchin Hospitality.

Further, during the EEOC's investigation, there is no evidence from the documents in the EEOC file that they investigated allegations of other types of sex discrimination or that Plaintiff's terms and conditions of employment, other than her salary and alleged retaliatory termination, were discriminatory or harassing or hostile or in any way inappropriate.

### 3.  Plaintiff's Initial Complaint

Plaintiff's initial Complaint, filed on May 6, 2005, when Plaintiff was represented only by Angela Hill, Esquire, exceeded the scope of Plaintiff's EEOC charge by alleging, for the first

time, a claim in Count I (sex discrimination, ¶ 4), that Plaintiff "was subjected to a hostile work environment that was exclusionary, disrespectful, unfair, unequal, and retaliatory." These "hostile environment" allegations were never raised in her EEOC charge and, obviously, these claims substantially exceeded the scope of both Plaintiff's EEOC charge and the investigation which was conducted by the EEOC.

That hostile work environment allegation was then expanded even more in Plaintiff's Amended Complaint filed on December 3, 2005.

4. <u>Plaintiff's Amended Complaint Substantially Exceeded The Scope Of Her EEOC Charge And Her Initial Complaint</u>

In Plaintiff's Amended Complaint filed on December 3, 2005, when Plaintiff was represented by Wiggins, Childs, Quinn & Pantazis, LLC, Plaintiff made even broader allegations alleging that, in addition to a discriminatory salary, the terms and conditions of her employment were sexually discriminatory and, further, that (¶¶ 7 & 20) Plaintiff was subjected to a "hostile work environment" because of her female gender by "comments, touching, and other actions." (¶¶ 4 & 8).

Plaintiff also alleged for the first time that she was paid unfairly in comparison to other property General Managers of Defendant, rather than just the Assistant General Manager at the Alexander City facility.

Plaintiff's _new_ sexual-harassment-like allegations of sex-based comments, touching, and other actions creating a hostile work environment clearly exceeded both the scope of her EEOC charge and even the allegations contained within her original Complaint. These new sexual-harassment-type allegations, which were made initially in December 2005, were raised for the first time approximately one (1) year and nine and one-half (9 1/2) months after her termination from Jameson in February 2004.

### III.    Argument

### 1.    The EEOC Charge And The Sanchez Doctrine

Plaintiff's allegations of a hostile work environment and Title VII sexually discriminatory terms of employment (other than pay as compared to the Assistant General Manager and her retaliatory termination) substantially exceed the scope of her EEOC charge and Defendant submits Plaintiff cannot now, for the first time, assert these allegations in federal court.[2]

The Eleventh Circuit (when it was the Fifth Circuit) addressed this issue early in the life of Title VII in Sanchez

---

[2]  Defendant concedes that Count III of Plaintiff's Complaint, an Equal Pay Act ("EPA") claim, does not require exhaustion of administrative remedies and therefore the Sanchez doctrine is inapplicable to that Count.  The EPA's statute of limitations, however, is not tolled during any administrative proceedings. Defendant submits that the EPA's two-year (or three-year in case of willfulness) limitations period can encompass allegedly discriminatory wages for two years prior to December 3, 2005, or December 3, 2003, two and one-half months prior to her termination.

v. Standard Brands, Inc., 431 F.2d 455, 560 (5th Cir. 1970) when
it held that a plaintiff must exhaust his/her administrative
remedies with the EEOC before filing a complaint. It further
held that the Title VII allegations in a plaintiff's civil
complaint remain limited by the scope of the EEOC investigation
which can reasonably be expected to grow out of the charge of
discrimination. See Gregory v. Georgia Dept. of Human
Resources, 355 F.3d 1277, 1280 (11th Cir. 2004); see also Green
v. Elixir Industries, supra, 152 Fed. Appx. at 840, and Lambert
v. Alabama Dept. of Youth Services, supra, 150 Fed. Appx. at
993, citing Alexander v. Fulton County, Georgia, 207 F.3d 1303,
1332 (11th Cir. 2000).

Defendant submits that the law is clear and Plaintiff, who
in this case was assisted by legal counsel in drafting her EEOC
charge, cannot for the first time in her Complaint in federal
court exceed the scope of the EEOC investigation, or an
investigation which could reasonably arise out of her EEOC
charge.

The two most recent decisions by the Eleventh Circuit,
Green, supra, and Lambert, supra, are instructive in this case.

In Green v. Elixir Industries, Inc., supra, plaintiff's
EEOC charge alleged only a racially discriminatory termination.
152 Fed. Appx. at 840. In his judicial complaint, however,

plaintiff alleged both a racially discriminatory termination and a hostile work environment. The employer moved to dismiss the hostile environment claim based on plaintiff's failure to exhaust his administrative remedies. The court found that a hostile work environment investigation cannot be reasonably expected to grow out of a charge of a racially discriminatory termination, particularly when plaintiff's alleged "dates of discrimination" included only his date of termination. Indeed, nothing in plaintiff's EEOC charge related to incidents of harassment. The court held:

> Because the facts alleged in Green's EEOC charge form cannot be said to encompass a hostile work environment claim, we affirm the district court's finding that his claim was therefore procedurally deficient [citing Sanchez].

152 Fed. Appx. at 841.

The court then affirmed the district court's dismissal of the hostile work environment claim.

Similarly, in Lambert v. Alabama Dept. of Youth Services, supra, the plaintiff's EEOC charge alleged a discriminatory suspension and transfer to a less desirable shift. Plaintiff's complaint, however, expanded beyond the EEOC charge, claiming that he was threatened with a lower performance evaluation and also that the sick-leave policy was applied to him in a discriminatory fashion. 150 Fed. Appx. at 191.

10

On appeal, the Eleventh Circuit reviewed the district court's dismissal of the action and concluded that because the complaint's broader allegations were not contained within the EEOC charge, nor reasonably related to the allegations in the EEOC charge, plaintiff had failed to exhaust her administrative remedies and the complaint was subject to dismissal. <u>See</u> 150 Fed. Appx. at 193-94.

Here, regarding Stough and her progression of allegations, Plaintiff's claims of a hostile work environment (Amended Complaint, ¶ 8), discriminatory evaluations, inspections, and staff assignments (Amended Complaint, ¶¶ 7 & 20), allegations of sexual comments and touching (Amended Complaint, ¶ 4), and Title VII claims that she was paid unfairly as compared to other General Managers were neither alleged in Plaintiff's EEOC charge nor could these allegations reasonably be encompassed by an investigation that would arise out of Plaintiff's narrow allegations of wage discrimination or a retaliatory termination.

### 5. Jameson Has Suffered Prejudice Because Of Plaintiff's Failure To Raise These Allegations In A Timely Manner

Plaintiff was terminated on February 18, 2004, and Plaintiff's allegations of a hostile work environment were initially raised in Plaintiff's original Complaint which was filed on May 6, 2005. Plaintiff added allegations of sexually

discriminatory evaluations, inspections, staff assignments, and sexual-harassment-like comments and sexual touching, and unfair wages as compared to other General Managers for the first time in Plaintiff's Amended Complaint of December 3, 2005.

Because these new allegations of discrimination were first raised between one and one-half (1 1/2) years to nearly two (2) years after Plaintiff was terminated, it has been difficult for Jameson to fully and fairly investigate these allegations in order to defend itself. Employees at the Jameson Inn in Alexander City have left, memories are less sharp, and documents have been misplaced or simply lost or destroyed by inadvertence. In fact, Plaintiff even failed to place Jameson on notice that these might be allegations until she filed her charge of discrimination in August 2005, nearly six (6) months after she was terminated.

Because of the difficulty in defending itself at this juncture, Jameson has been unfairly prejudiced by these new allegations.

Indeed, this is one of the principal reasons for the Sanchez doctrine. Courts seem to realize that while employees should be able to have their claims of discrimination and retaliation heard fully and fairly by the EEOC and the courts, employees must raise these allegations in a timely manner so

that the EEOC can investigate the claims and the employer has fair notice of the claims. This did not happen here and Plaintiff has only herself to blame.

## CONCLUSION

Based on the foregoing, Defendant requests that Plaintiff's allegations against Jameson alleging a hostile work environment, discriminatory evaluations, inspections, staff assignments, sexual comments and sexual touching be excluded from the scope of Plaintiff's Complaint, and that Plaintiff not be allowed to litigate these issues in this matter.

This 14th day of March, 2006.

IRVIN, STANFORD & KESSLER, LLP

By:  s/ Gary R. Kessler
     Gary R. Kessler
     Alabama Bar No. ASB-0251-L52G
     IRVIN, STANFORD & KESSLER, LLP
     3060 Peachtree Road, N.W.
     Suite 1050
     Atlanta, Georgia 30305
     404-237-1020 (office)
     404-237-1047 (facsimile)
     gkessler@isklaw.com
     COUNSEL FOR DEFENDANT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

BELINDA STOUGH,                      :
                                     :
     Plaintiff,                      :
                                     :
v.                                   :      CASE NO. 3:05cv421-W
                                     :
JAMESON INNS, a company              :
owned or operated by                 :
KITCHIN HOSPITALITY, LLC,            :
                                     :
     Defendant.                      :

---

### CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PORTIONS OF PLAINTIFF'S AMENDED COMPLAINT BASED ON FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Angela J. Hill
ajhill_law@bellsouth.net

Kell Ascher Simon
kas@wcqp.com

Maury Steven Weiner
mweiner@wcqp.com

and served a copy via United States Mail to the following counsel of record:

Jon C. Goldfarb
Wiggins, Childs, Quinn & Pantazis  LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203

This 14th day of March, 2006.

                         s/ Gary R. Kessler
                         Gary R. Kessler

14

**EXHIBIT  1**

Westlaw.

150 Fed.Appx. 990                                          Page 1

150 Fed.Appx. 990

(Cite as: 150 Fed.Appx. 990)

**C**

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Eleventh Circuit Rule 36-2. (FIND CTA11 Rule 36-2.)

United States Court of Appeals,
Eleventh Circuit.
Daniel LAMBERT, Plaintiff-Appellant,
v.
ALABAMA DEPARTMENT OF YOUTH
SERVICES, Defendant-Appellee,
Board of Directors of Department of Youth
Services, et al., Defendants.
No. 04-14952
Non-Argument Calendar.
D.C. Docket No. 02-02801-CV-B-S.

Oct. 21, 2005.

**Background:** Former state employee sued employer alleging racial discrimination, harassment, intimidation, and retaliation under Title VII. The United States District Court for the Northern District of Alabama granted employer's motion to dismiss, and employee appealed.

**Holding:** The Court of Appeals held that employee failed to exhaust his remedies with the Equal Employment Opportunity Commission (EEOC), as required prior to filing discrimination claim under Title VII.
Affirmed.

West Headnotes

Civil Rights ⊙═1516

78k1516 Most Cited Cases
State employee failed to exhaust his remedies with the Equal Employment Opportunity Commission (EEOC), as required prior to filing discrimination claim under Title VII alleging he was required to strip and wax floors, which was not part of his job description, and that, if he failed to do so, it would be reflected in a lower evaluation and that the sick leave policy was being applied against him in a discriminatory fashion; employee's claim to the EEOC, indicating that he was suspended for being disruptive and transferred to a less desirable shift on the basis of his race and gender, would not have reasonably led the EEOC to investigate whether employee was being forced to wax and strip floors or being denied sick leave on the basis of his race and gender. Civil Rights Act of 1964, § 706, 42 U.S.C.A. § 2000e-5.
*991 Daniel Lambert, Birmingham, AL, pro se.

Thornton Dudley Perry, Jr., Alabama Department of Youth Services, Mount Meigs, AL, for Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Alabama.

Before CARNES, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Daniel Lambert, an African-American male, appeals *pro se* the dismissal without prejudice of his civil action alleging wrongful discharge on the basis of race, racial harassment, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5. Lambert argues on appeal that the district court improperly dismissed his complaint for having alleged discriminatory acts differing from those presented to the Equal Employment Opportunity Commission (EEOC) in his original administrative charge of discrimination.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For the reasons set forth more fully below, we affirm.

Lambert, proceeding *pro se* below, sued his former employer, the Alabama Department of Youth Services, and several individuals, alleging racial discrimination, harassment, intimidation, and retaliation under Title VII, 42 U.S.C. § 2000e-5. [FN1] Specifically, Lambert, a former Youth Services Aide, alleged in his complaint that his supervisor was requiring him to strip and wax floors, which was not part of his job description, and that, if he failed to do so, it would be reflected in a lower evaluation. He further alleged that the sick leave policy was being applied against him in a discriminatory fashion because he was required, on one occasion, to provide a doctor's letter excusing a sick day. Lambert sought compensatory, punitive, and any other damages the court deemed feasible. Included with his complaint was, *inter alia,* a notice of right to sue letter issued by the EEOC on August 30, 2002.

> FN1. The case styling of the action was later amended to reflect that liability could be asserted only against Lambert's employer, Alabama Department of Youth Services, rather than any individual defendants. Thus, the defendant is referred to as "the state" in this opinion.

The state responded by filing a motion to dismiss the complaint for, *inter alia,* failure to exhaust administrative remedies. It argued that Lambert's charge of discrimination, filed with the EEOC on July 12, 2002, alleged only that Lambert had been suspended for being disruptive and had been transferred to a less desirable shift. The "charge of discrimination" was attached, and alleged that, on June 20, 2002, Lambert was "suspended for one day" for being disruptive, and that, on June 22, 2002, Lambert was transferred to a "less desirable shift." Because Lambert's complaint mentioned issues concerning his sick leave and being required to wax and strip floors, the state argued that the district court had no jurisdiction over the complaint because the allegations of the complaint were unrelated to the charge of discrimination filed with

the EEOC.

**\*992** Lambert objected to the state's motion, but did not address the failure to exhaust argument directly. Instead, he argued that his complaint should have been construed as defective and that he should be given the opportunity to amend it. Lambert further argued that the complaint should not be dismissed because there were justiciable and valid issues to address. He also filed a motion for judgment by default, and included with that motion another right to sue letter issued by the EEOC on March 17, 2003. The state's motion was denied, based in part on the March 17, 2003, letter, which the magistrate said suggested at least some additional EEOC action since Lambert's June 2002 complaint, and the requirement that Lambert's *pro se* complaint be construed liberally.

Lambert then amended his complaint, including the same claims as before regarding sick leave and the stripping and waxing of floors, and adding a claim alleging that the state violated his First Amendment rights when it retaliated against him for speaking out on a matter of public concern. Specifically, Lambert alleged that he was terminated for complaining that the "Thomasville facility" was out of compliance with the "A.W. Consent Decree," and for ordering someone to retrieve a nurse to attend to a sick student whom his supervisor believed was "faking it." Several months later, an attorney entered an appearance on Lambert's behalf.

In response to Lambert's amended complaint, the state filed a renewed motion to dismiss the complaint, arguing that (1) the substance of Lambert's complaint did not match the allegations of the charge of discrimination filed with the EEOC, and (2) in any event, the March 17, 2003, letter was not a "Right to Sue" letter from the Attorney General, but rather a simple determination letter from the EEOC, and the state argued that Lambert, therefore, had failed to plead a jurisdictional requirement of 42 U.S.C. § 2000e-5(f)(1). Attached were the March 17, 2003, "notice of suit rights," referencing Charge No. 130 A30 0993, and the July 12, 2002, "charge of discrimination" filed with the EEOC and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

150 Fed.Appx. 990

150 Fed.Appx. 990

(Cite as: 150 Fed.Appx. 990)

referencing Charge No. 130A202606. Lambert was informed that he had one week to respond.

A magistrate then issued a report and recommendation and, after noting that Lambert failed to respond to the state's renewed motion to dismiss, found that the only EEOC charge that it was aware of was the one alleging that Lambert was suspended for being disruptive and assigned to a less desirable shift. Because those charges were different from the ones raised in Lambert's amended complaint, and there was no evidence that the allegations in that complaint were raised in a separate EEOC charge, the magistrate recommended dismissing the complaint without prejudice for failure to exhaust remedies. The district court adopted the magistrate's recommendation and dismissed the case without prejudice on July 29, 2004. However, three days earlier, Lambert had filed a motion to set aside the judgment and reinstate the case because of his attorney's inadequate representation and failure to lodge objections to the magistrate's report. A magistrate granted the motion for the limited purpose of permitting Lambert to file objections to the report.

Lambert then filed objections, requesting leniency regarding his complaint due to his *pro se* status and arguing that he had complied with Fed.R.Civ.P. 8(a)(1). He further argued that 42 U.S.C. § 2000e-5(f)(1) did not require that the Attorney General issue a right to sue letter, but dealt with notice of any conciliation agreement reached. The district court reviewed the objections, found them to be without *993 merit, and again ordered the case dismissed without prejudice.

On appeal, Lambert proceeds *pro se*, arguing that the district court erred by dismissing his complaint and he believes that his case should be allowed to go forward. In his statement of the facts, Lambert reiterates that his supervisor demanded that he strip and wax floors, which was not a part of his duties, and if he failed to do so, it would be reflected in his evaluation. He further notes that a white supervisor permitted white students to enter the building unsupervised, but reprimanded blacks, including

Lambert, for doing the same thing. Lastly, he argues that he was entitled to sick pay and that the sick leave policy was inherently discriminatory. Lambert does not make any argument regarding the First Amendment claim. [FN2]

> FN2. This issue is deemed waived. *See Furrow v. West*, 320 F.3d 1235, 1242 n. 10 (11th Cir.2003). Furthermore, Lambert's allegation that a white supervisor allowed white students to enter the building unsupervised but reprimanded Lambert and black children for doing the same thing is raised for the first time on appeal, will not be considered. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir.2004). In any event, as discussed below, none of these allegations were related to the only record evidence of charges of discrimination filed with the EEOC and, therefore, these allegations are not properly before us on that ground as well.

We review *de novo* a district court's order granting a motion to dismiss. *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir.2004). "No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." *Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1332 (11th Cir.2000) *citing* 42 U.S.C. § 2000e-5. "EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.' " *Id. citing* 29 C.F.R. § 1601.12(a)(3). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* "The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir.2000).

As we have explained, "[t]he purpose of this exhaustion requirement 'is that the [EEOC] should

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

150 Fed.Appx. 990

150 Fed.Appx. 990

**(Cite as: 150 Fed.Appx. 990)**

have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.' " *Gregory v. Georgia Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir.2004) (citation omitted), Thus, we have held that "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but [have] cautioned that allegations of new acts of discrimination are inappropriate." *Id.* at 1279-80 (citation omitted).

The record in this case reveals two different EEOC notices of a right to sue, but only one actual charge of discrimination. That one charge of discrimination, filed on July 12, 2002, stated that, on June 20, 2002, Lambert was suspended for one day for being disruptive, and that on or about June 22, 2002, he was transferred to a less desirable shift. Lambert claimed that these actions were discriminatory based on his race and sex, and that he was retaliated against for filing a grievance.

Lambert's amended complaint, however, alleges that his supervisor has demanded that Lambert wax and strip floors, something not a part of his job duties, and that if Lambert fails to do so, it would be reflected in a negative evaluation. He further *994 alleges that the sick leave policy is inherently discriminatory, and cites an incident where he called in sick, was told that he had to bring a doctor's note excusing his absence, and ended up being denied paid sick leave.

On these allegations, we conclude that the district court properly found that Lambert had failed to exhaust his remedies with the EEOC, and properly granted the state's motion to dismiss. Lambert's claim to the EEOC, that he was suspended for being disrupted and transferred to a less desirable shift on the basis of his race and gender, would not reasonably lead the EEOC to investigate whether Lambert was being forced to wax and strip floors or being denied sick leave on the basis of his race and gender. These allegations do not clarify, amplify, or more clearly focus the allegations in the original EEOC complaint, but rather are allegations of new

acts of discrimination that this Court has held are inappropriate. *See Gregory*, 355 F.3d at 1279-80. There is no evidence in the record that Lambert raised these claims to the EEOC in a formal charge of discrimination and, therefore, Lambert improperly failed to exhaust his remedies prior to filing suit in the district court.

Accordingly, the district court did not err by dismissing Lambert's complaint without prejudice. We, therefore, affirm.

AFFIRMED.

150 Fed.Appx. 990

**Briefs and Other Related Documents (Back to top)**

• 04-14952 (Docket) (Sep. 27, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT  2**

Westlaw.

152 Fed.Appx. 838

152 Fed.Appx. 838

(Cite as: 152 Fed.Appx. 838)

H

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Eleventh Circuit Rule 36-2. (FIND CTA11 Rule 36-2.)

United States Court of Appeals,
Eleventh Circuit.
Freddy GREEN, Plaintiff-Appellant,
v.
ELIXIR INDUSTRIES, INC., Defendant-Appellee.
No. 04-12973.
D.C. Docket No. 01-00083-CV-5.

Oct. 11, 2005.

**Background:** African-American former employee brought action against former employer, alleging violation of Title VII and § 1981, for both wrongful termination on the basis of race and hostile work environment race discrimination. The United States District Court for the Southern District of Georgia, William T. Moore, Jr., J., granted summary judgment in favor of former employer on the hostile work environment claim, and entered judgment, upon jury verdict, in favor of employer on the wrongful termination claim. Employee appealed the summary judgment ruling.

**Holding:** The Court of Appeals held that employee's Equal Employment Opportunity Commission (EEOC) charge was insufficient to charge race discrimination based upon hostile work environment.
Affirmed.

Superseding 407 F.3d 1163.

West Headnotes

**[1] Civil Rights** ⟜1516
78k1516 Most Cited Cases
Equal Employment Opportunity Commission (EEOC) charge filed by African-American former employee, asserting that he believed that he was terminated because of his race in violation of Title VII, was insufficient to charge race discrimination based upon hostile work environment, and thus, hostile work environment claim was barred in federal court as outside the scope of the EEOC charge; EEOC charge listed date that employee was terminated as both the starting and ending date of the discrimination, factual allegations contained in EEOC charge related to termination, and no facts were asserted related to incidents of harassment or dates on which alleged harassment occurred. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Federal Courts** ⟜915
170Bk915 Most Cited Cases
Former employee's failure to raise § 1981 claims on appeal rendered issue abandoned. 42 U.S.C.A. § 1981.

*839 Bryant H. Bower, Jr., Bower Law Office, Willis H. Blacknall, III, Thomas, Blackwall & Thomas, Waycross, GA, for Plaintiff-Appellant.

J. Ellsworth Hall, IV, Hall, Block, Garland & Meyer, Macon, GA, for Defendant-Appellee.

Appeal from the United States District Court for the Southern District of Georgia.

Before BARKETT, HILL and FARRIS, [FN*] Circuit Judges.

FN* Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

152 Fed.Appx. 838

152 Fed.Appx. 838

(Cite as: 152 Fed.Appx. 838)

Page 2

PER CURIAM.

We withdraw our previous opinion and substitute this opinion in its place.

Freddy Green appeals the district court's grant of summary judgment in favor of Elixir Industries on his race employment discrimination claim. Green filed suit in district court alleging wrongful termination on the basis of race, as well as racial hostile work environment discrimination, in violation of 42 U.S.C. § 2000e *et seq.* (Title VII) and 42 U.S.C. § 1981. [FN1] Although the district court found the merits of Green's hostile work environment claim sufficient to withstand summary judgment, the court nonetheless granted summary judgment on that claim under both Title VII and § 1981, on the grounds that the Equal Employment Opportunity Commission ("EEOC") charge Green had filed was deficient.

> FN1. The wrongful termination claim went to trial, and the jury returned a verdict for Elixir Industries.

We affirm the district court's determination that Green's EEOC charge was insufficient to provide notice of a Title VII hostile work environment claim. While § 1981 does not require a plaintiff to exhaust administrative remedies by filing an EEOC charge, Green has abandoned any argument concerning his § 1981 claims, because he failed to raise them on appeal. Accordingly, we affirm.

## BACKGROUND

Plaintiff Freddy Green is a black male who was employed by Defendant Elixir Industries, Inc. at its Georgia Extrusion Division in Douglas, Georgia from March 1995 until he was terminated on January 2, 2001. Following his termination, Green filed a pro se charge of discrimination with the EEOC. Green checked the box stating that the discrimination alleged was racial. In the box where Green was required to state the dates of the discrimination, Green wrote "January 2, 2001" as the "earliest" *840 and "latest" dates. In the factual particulars section, Green stated:

1. I was employed from March 7, 1995 until my

discharge January 2, 2001. I was terminated for violation of the attendance policy, but I have no written warnings for attendance. White males that have written warnings and have committed further violations were not terminated.

II. Management stated I was discharged because of violation of the attendance policy.

III. I believe that I have been discriminated against because of my race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

The EEOC investigated Green's charges and concluded that Green was not terminated because of his race. [FN2] It issued Green a right to sue letter.

> FN2. Green claims that he told an EEOC investigator about the harassing conduct and provided paperwork to the EEOC substantiating the incidents concerning his hostile-environment claim. The EEOC has since destroyed Green's file. However, there is no dispute concerning Green's EEOC charge form, which did not include facts concerning his hostile-environment claim.

Green subsequently filed this action, which alleged both racial hostile environment discrimination and racially-motivated termination in violation of Title VII and § 1981. Green's allegations in the suit include repeated and outrageous acts of racially motivated harassment.

Elixir filed a motion for summary judgment, asserting that Green's EEOC charge did not contain specific allegations of a hostile work environment, but only mentioned his termination as the discriminatory act, and listed January 2, 2001, as both the starting and ending date of the discriminatory conduct. Elixir claimed that a hostile work environment investigation could not reasonably be expected to grow out of this charge, and that Green's Title VII claim was therefore procedurally deficient. The district court found that Green's EEOC charge was deficient and granted summary judgment solely on that basis.

## DISCUSSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

152 Fed.Appx. 838

152 Fed.Appx. 838

**(Cite as: 152 Fed.Appx. 838)**

[1] We review the grant of summary judgment de novo. *Higdon v. Jackson,* 393 F.3d 1211, 1218 (11th Cir.2004). Before filing a Title VII action, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 460 (5th Cir.1970). [FN3] Though we must liberally construe EEOC charges that are prepared without the assistance of counsel, a plaintiff's civil complaint remains "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1280 (11th Cir.2004) (quoting *Alexander v. Fulton County,* 207 F.3d 1303, 1332 (11th Cir.2000)).

> FN3. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Though Green relies on *Gregory* to argue that his EEOC charge embraced a hostile environment claim, we find *Gregory* inapposite. In *Gregory,* though the plaintiff failed to check the box labeled "retaliation" on the EEOC charge, the charge nonetheless alleged facts that reasonably encompassed a claim for retaliation. *Gregory,* 355 F.3d at 1280. By contrast, all of the factual allegations contained in Green's EEOC charge relate to his termination and none relate to a retaliation claim. He *841 noted the date of his termination as both the earliest and latest date of discriminatory conduct; explained that his termination ostensibly stemmed from attendance policy violations; and stated that white males with inferior attendance records were retained. Nothing in Green's EEOC charge related to incidents of harassment, nor did anything mention the dates on which they occurred. Because the facts alleged in Green's EEOC charge form cannot be said to encompass a hostile work environment claim, we affirm the district court's finding that his claim was therefore procedurally deficient. *See Sanchez,* 431 F.2d at 466 (explaining that a Title VII complaint

may encompass only the kinds of discrimination like or related to the allegations contained in the EEOC charge).

[2] Unlike Title VII, § 1981 does not require that a plaintiff exhaust administrative remedies before filing an action in federal court. *See Caldwell v. Nat'l Brewing Co.,* 443 F.2d 1044, 1046 (5th Cir.1971) (holding that a plaintiff alleging discriminatory employment practices with regard to race "has an independent remedy under § 1981 without respect to exhaustion under Title VII"). As such, a hostile work environment claim brought under § 1981 cannot be defeated by a deficient EEOC charge. Thus, while the district court improperly entered summary judgment on Green's § 1981 claim based on his failure to exhaust administrative remedies, circuit precedent dictates that Green's failure to raise his § 1981 claim on appeal renders the issue abandoned. *See United States v. Ardley,* 242 F.3d 989, 990 (11th Cir.2001) (applying "our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned").

AFFIRMED.

152 Fed.Appx. 838

**Briefs and Other Related Documents (Back to top)**

• 04-12973 (Docket) (Jun. 14, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 3**

# CHARGE OF DISCRIMINATION

| | CHARGE NUMBER |
|---|---|

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | FEPA | |
|---|---|---|
| X | EEOC | 130-2004-03990 |

and EEOC

|  | | State or local Agency, if any |

NAME (Indicate Mr., Ms., Mrs.)
Mrs. Belinda Stough

HOME TELEPHONE (Include Area Code)
(256) 329-1385

STREET ADDRESS
Rt. 3 Box 206 K-1 Goodwater

CITY, STATE AND ZIP CODE
Goodwater AL 35072

DATE OF BIRTH
5-17-60

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

NAME
Jameson Inn

NUMBER OF EMPLOYEES, MEMBERS

TELEPHONE (Include Area Code)
(256) 234-2099

STREET ADDRESS
4335 Hwy 280

CITY, STATE AND ZIP CODE
Alexander City AL

COUNTY
Tallapoosa

NAME

TELEPHONE NUMBER (Include Area Code)

STREET ADDRESS

CITY, STATE AND ZIP CODE

COUNTY

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| | RACE | | COLOR | X | SEX | | RELIGION | | AGE |
|---|---|---|---|---|---|---|---|---|---|
| X | RETALIATION | | NATIONAL | | | | DISABILITY | | OTHER (Specify) |
| | | | ORIGIN | | | | | | |

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)          LATEST (ALL)

February 18, 2004

CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

My name is Belinda Stough am a female who served as General Manager of the Jameson Inn of Alexander City, Alabama until February of 2004. During early February of 2004, an Assistant Manger was hired to assist me in the operation of Jameson Inn were I served a General Manager. After he had been employed for approximately two weeks, I discovered that the Assistant Manager had been hired and had begun work at a salary equal to what I was being paid after having worked for the company for four years and even though I was the Assistant Managers Supervisor and Superior.

When I complained to the District Manager of this disparity and what I considered to be discrimination an the basis of my sex on February the 18th 2004, I was terminated from employment in retaliation for my having made a complaint about disparity in pay on the basis of my sex.

| | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency. If any will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 3-9-04 | |
| Date          Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (10/94)

**EXHIBIT  4**

Page 25

```
 1        Q    Okay.   The charge of
 2   discrimination that you filed with the
 3   EEOC?
 4        A    Yes, sir, that's correct.
 5        Q    In speaking to that
 6   charge let me show it to you since I want
 7   to ask you a question about it.
 8                   (Defendant's Exhibit
 9                    No. 1 was marked
10                    for identification.)
11        Q    Ms. Stough, let me hand to you
12   what's been marked as Defendant's Exhibit
13   No. 1 and ask you if that's your
14   signature on the bottom left-hand corner?
15        A    Yes, sir.
16        Q    And this is your EEOC charge?
17   You have to say yes.
18        A    Yes, sir.
19        Q    And weren't you represented by
20   a lawyer at the time that you filled this
21   out?
22        A    Yes, sir.
23        Q    And the lawyer's name was E.
```

Page 26

```
 1      Paul --

 2           A       Jones.

 3           Q       E. Paul Jones?

 4           A       Yes, sir.

 5           Q       Is that correct?

 6           A       Yes, sir.

 7           Q       In drafting this charge did

 8      you work with Mr. Jones?

 9           A       Yes, sir, I did.

10           Q       Okay.  And Mr. Jones is a

11      lawyer in Alex City?

12           A       He is now the District

13      Attorney.

14           Q       Okay.  But then --

15           A       At the time he was, yes, sir.

16           Q       At that time he was a lawyer

17      in Alex City?

18           A       Yes, sir.

19           Q       How long did Mr. Jones

20      represent you?

21           A       Oh, about two years.  About

22      two years.

23           Q       In this matter?
```

1        A        About a year.

2        Q        Okay.  And then after

3    Mr. Jones stopped being your lawyer then

4    Ms. Hill became your lawyer; is that

5    correct?

6        A        Yes, sir.

7        Q        And then Ms. Hill, does she

8    currently represent you?

9        A        She has currently represented

10   me.

11       Q        I'm not sure when you say she

12   has currently does that mean she does now

13   or she does not?

14       A        She does still.  I think she

15   had turned it over to Mr. Goldfarb.

16               MR. GOLDFARB: She's still on.

17   I didn't take her off the pleadings.

18       A        I'm not sure how that went.

19       Q        (BY MR. KESSLER:)  I

20   understand.  All right.  But anyway I

21   guess the EEOC charge was this filed by

22   you or by Mr. Jones on your behalf?

23       A        He asked me to write up a

FOSHEE & TURNER COURT REPORTERS

Page 28

1    letter and to put the information in and

2    just kind of explain to him everything so

3    that he could file the EEOC charge.

4        Q      What do you mean by write up a

5    letter?

6        A      He wanted me to write up and

7    tell him exactly what had happened and

8    why I had felt --

9              MR. GOLDFARB: Be careful to

10   tell what he told you to do.  It's all

11   privileged so don't talk about what the

12   lawyer told you to do or what you told

13   the lawyer.

14       A      Okay.

15       Q      (BY MR. KESSLER:) Well, did

16   you write a letter?

17       A      I wrote a letter.

18             MR. GOLDFARB: To your lawyer?

19       A      To the lawyer, correct.  To my

20   lawyer.

21             MR. GOLDFARB: So I'm telling

22   you don't tell him what's in the letter.

23       A      Okay.

Page 29

```
 1              MR. KESSLER: If she doesn't
 2    want to produce it that's fine.
 3              MR. GOLDFARB: Do you have that
 4    letter?
 5         A    I do not have the letter.
 6         Q    (BY MR. KESSLER:) Do you know
 7    whether Mr. Jones has the letter?
 8         A    I do not know if he does.
 9              MR. GOLDFARB: He might have
10    sent it to the EEOC.
11              MR. KESSLER: Well, that's what
12    I'm saying.
13              MR. GOLDFARB: Yeah.  Ask her.
14    I don't know if he sent it to the EEOC.
15    Ask her.
16         Q    (BY MR. KESSLER:) Do you know
17    if he sent it to the EEOC?
18         A    No, sir, because a lot of
19    the -- a lot of the things that were in
20    the letter is not in the claim.
21         Q    Right, but we don't know what
22    the letter says do we?
23              MR. GOLDFARB: Ask it.  I don't
```

Page 30

1    care.  Ask her about it.  I don't want to

2    waive attorney-client privilege but I

3    will let you get into the letter that she

4    wrote.

5         Q      (BY MR. KESSLER:) Well, first

6    let me ask you these questions and I

7    appreciate that.  You don't have a copy

8    of the letter do you?

9         A      No, sir, I do not.

10        Q      Since you sent this letter to

11   Mr. Jones you've never seen the letter

12   since then?

13        A      No, sir, I have not.

14        Q      Have you looked through the

15   EEOC file?

16        A      Pardon?

17        Q      Have you looked through the

18   EEOC file?

19        A      The whole file?

20        Q      Yes.

21        A      No, sir.

22        Q      Okay.  So, did you send a copy

23   of the letter to anyone else other than

Page 31

1    Mr. Jones?

2        A       No, sir.

3        Q       During the time that you were

4    represented by Ms. Hill did you ever see

5    the letter?

6        A       No, sir.

7        Q       During the time that you've

8    been represented by Mr. Goldfarb have you

9    seen the letter?

10       A       No, sir.

11       Q       So other than sending the

12   letter to Mr. Jones you just haven't seen

13   it since then?

14       A       I sat and wrote it in his

15   office.

16       Q       Right.  But you haven't seen

17   it since then?

18       A       No, sir, I have not.

19       Q       And so this would have been

20   in -- when did you write this letter?

21       A       When I filed the claim which

22   was in August I do believe.

23       Q       August '04?

Page 32

1          A       Yes, sir.

2          Q       So it was almost two years

3    ago?  About a year and a half ago?

4          A       Yes, sir.

5          Q       So what did the letter say?

6          A       Pretty much the conversation

7    that I had with Mr. Woods about the pay

8    and the discrimination that I felt like I

9    had been discriminated against because I

10   was a female and that I was aware by the

11   payroll records that Mark Fetner, which

12   was at that time my assistant manager,

13   was making the same pay that I was making

14   and I questioned that.

15         Q       Anything else in the letter?

16         A       No, sir, other than the fact

17   that I felt like I had been discriminated

18   against because I was a female and I felt

19   the pay discrimination was unfair.

20         Q       Did you explain it in any way

21   in this letter that you claim that you

22   wrote as to why you believe you were

23   discriminated against because you were a

Page 33

1    female?

2        A       I'm sorry?

3        Q       Did you explain in the letter

4    the basis for why you believe you were

5    being discriminated against because you

6    were a female?

7        A       Yes, sir, to the fact that I

8    felt like I was discriminated against

9    because I was a female and I wasn't a

10   male and that I felt like that I wasn't

11   given a fair pay.

12       Q       Did you state any facts or

13   anything in the letter that led you to

14   believe that the reason you were being

15   treated the way you were was because you

16   were a female?

17       A       I don't understand.

18       Q       I know you're saying you

19   believe that you were treated the way you

20   were because you were a female, okay?

21       A       Correct.

22       Q       And my question is did you

23   have any facts in there, any events in

Page 34

1    there upon which you said this

2    demonstrates why I think that I was

3    treated this way because I'm a female?

4        A    I still don't understand

5    exactly what you want.  I mean --

6        Q    Maybe I'm not asking the

7    question clearly.  I apologize.  Other

8    than saying I believe I've been

9    discriminated against because I'm a

10   female and, you know, on the pay issue I

11   think that you know Mark Fetner should

12   not have been paid the same thing, were

13   there any other facts?  You know what a

14   fact is?

15       A    Right.

16       Q    Any other facts that you had

17   in the letter that supported your belief

18   that you were being discriminated against

19   because you were a woman?

20       A    Because I was the general

21   manager and he was an assistant manager.

22   I felt like he should not be getting

23   equal pay when he had just come on board

FOSHEE & TURNER COURT REPORTERS

Page 35

1    on the company and I had been there over

2    three and a half, four years.

3         Q    Okay.  Fair enough.  Any I'm

4    trying to find out what was in the

5    letter.  Anything else in the letter?

6              MR. GOLDFARB: That you can

7    recall that's in the letter.

8         A    Other than -- well, to recall

9    what else was in the letter.  That

10   basically would have covered it.

11        Q    Okay.  I want to make sure we

12   get your best recollection today.

13        A    Yes, sir.

14        Q    Thank you.

15                  (Defendant's Exhibit

16                  No. 2 was marked

17                  for identification.)

18        Q    All right.

19        A    I'm sorry, is there any way

20   that I can add something to the

21   statement?

22        Q    Sure.

23        A    I felt like with the situation

**EXHIBIT  5**

EEOC FORM 131 (5/01)

## U. S. Equal E. ployment Opportunity Commis ...on

| | PERSON FILING CHARGE |
|---|---|
| Jeff Harley<br>Human Resources<br>JAMESON INN<br>8 Perimeter Center<br>Suite 8050<br>Atlanta, GA 30329 | **Belinda Stough** |
| | THIS PERSON *(check one or both)*<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**130-2004-03980** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act      [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act     [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by    **18-SEP-04**    a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by       to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by    **02-SEP-04** to    **Debra B. Leo, ADR Coordinator, at (205) 212-2033**
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

> **Donald P. Burris,**
> **Deputy Director**
> *EEOC Representative*
> Telephone: **(205) 212-2146**

**Birmingham District Office**
**Ridge Park Place**
**1130 22nd Street, South**
**Birmingham, AL 35205**

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [X] RETALIATION   [ ] OTHER

See enclosed copy of charge of discrimination.

Jameson-0265

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Aug 18, 2004 | Bernice Williams-Kimbrough,<br>District Director | *Bernice Williams-Kimbrough (RRK)* |

**EXHIBIT   6**

# Kitchin Hospitality, LLC

Steven A. Curlee
Vice President - Legal and General Counsel

♦ 8 Perimeter Center East, Suite 8050 ♦ Atlanta, GA 30346-1604 ♦ (770) 901-9020 ♦ FAX (770) 901-9203 ♦
♦ vPresident@aol.com ♦

**Via Facsimile & First-Class Mail**

Ron Lyas
Investigator
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South
Birmingham, AL 35205

| | | |
|---|---|---|
| Re: | Charging Party: | Belinda Stough |
| | Respondent: | Kitchin Hospitality, LLC d/b/a Jameson Inn, Alexander City, Alabama |
| | Charge No.: | 130 2004 03980 |
| | Date of Charge: | August 18, 2004 |

Dear Mr. Burris:

This letter constitutes the Respondent's Statement of Position to the Charge of Discrimination made by Ms. Belinda Stough ("Ms. Stough" or "Complainant") as to alleged discrimination based upon her gender (female). As explained below, Kitchin Hospitality, LLC, is the proper Respondent who should have been named in the above referenced matter. As shown by the facts presented and discussed below, it is the position of the Respondent that the Complainant was not treated in a discriminatory or disparate manner on the basis of her gender. As clearly shown by the facts, Respondent's compensation decisions were not discriminatory and were based on valid, reasonable criteria. For the reasons stated below, the Charges of Discrimination filed by the Complainant with the Commission should be dismissed or administratively closed.

## THE RESPONDENT'S BUSINESS AND WORKPLACE

The respondent named in the Charge of Discrimination, Jameson Inn® is not a legal entity but a registered trademark used as a brand name. The Jameson Inn Inn® hotel, 4335 Highway 280, Alexander City, Alabama ("Hotel"), is a limited service hotel and a unit of the Jameson Inn® hotels division of Kitchin Hospitality, LLC, a subsidiary of Atlanta, Georgia based Jameson Inns, Inc. There are 96 hotels leased and operated by Kitchin Hospitality, LLC under the Jameson Inns® brand name, most of which are located in the Southeast. The Hotel is managed by a general manager who reports to a district manager and a regional manager. All management personnel, supervisors, and hotel staff at the Hotel were, at the time of the alleged incidents complained of, employees of Kitchin Hospitality, LLC. All non-management hotel staff hiring, promotion, job assignment or termination decisions and actions for the Hotel, except in extraordinary circumstances, are made by the Hotel's general manager.

Jameson-0277

Mr. Ron Lyas
December 1, 2004
Page 2

### THE CIRCUMSTANCES REGARDING THE COMPLAINING PARTY'S COMPENSATION

Complainant began her employment as a Front Desk Associate at the Hotel on May 10, 2000 and her employment was terminated on or about February 18, 2004. She was hired by former General Manager, William Plummer (male), and was paid on an hourly basis at the rate of $5.75 per hour. Her hourly rate was later increased to $6.50. Mr. Plummer was subsequently transferred to another Jameson Inn, and in August 2000 Complainant was promoted to General Manager of the Hotel by Charles Woods, the District Manager who supervised the district that included the Hotel. Upon promotion to General Manager, Complainant was paid an annual salary of $21,000.00 and was eligible to receive performance based bonuses. The decision to terminate Ms. Stough's employment at the Hotel was made by Mr. Woods.

During her tenure as General Manager of the Hotel, Complainant's work performance was not satisfactory on several occasions. She was given a written reprimand on June 17, 2003 (Exhibit A) for excessive absenteeism and for not notifying Mr. Woods of her absences. She was also given a reprimand on that same day for the Hotel having received its second consecutive poor score on a quality assurance inspection (Exhibit B). On December 29, 2003, Mr. Woods wrote another corrective action notice to Complainant (Exhibit C) regarding poor scores on subsequent quality assurance inspections and inadequate training at the Hotel, both of which are the responsibility of the General Manager.

By December 2003, it was apparent that the Hotel was not being properly managed and that additional management skills were needed for the Hotel. Mr. Woods began searching for a candidate for the Assistant General Manager position at the Hotel who could improve the management strength of the hotel. In January 2004, Mr. James Mark Fetner was hired as an Assistant General Manager at the Alexander City Jameson Inn to assist in improving the operation and management of that hotel, and ultimately to serve as a General Manager of a Jameson Inn. Based on Mr. Fetner's employment experience and the fact that he had a college degree, Mr. Fetner was given a salary equal to Complainant's salary at the time. He was not, however, eligible to participate in the bonus plan provided for General Managers.

In late 2003, Respondent reviewed its compensation policies for the General Managers and Assistant General Managers at all of its Jameson Inns. This review resulted in plans to implement significant increases in the base salary of many of its General Managers and Assistant General Managers, such that at a 60-room Jameson Inn the range of the base salary for the General Manager was increased in most locations to $26,000 to $32,000, and for Assistant General Managers the salary range was increased to $18,000 to $24,000. The salary paid to any particular General Manager depended upon the hotel location, the tenure of the General Manager and the education and overall experience of the General Manager. Gender was not a factor. In fact, most of the Respondent's General Managers are female. In reviewing the compensation paid to Complainant, a decision was made not to adjust her salary due to her lack of experience and the poor management

Jameson-0278

Mr. Ron Lyas
December 1, 2004
Page 3

results observed at the Hotel. When Mr. Fetner was hired as Assistant General Manager for the Hotel, he was paid a salary that was within the range being paid to other newly hired Assistant General Managers.

On February 3, 2004, Mr. Woods had a conversation with Complainant regarding deficiencies previously noted in the management and condition of the hotel and performance standards she needed to meet. He sent her an email three days later to remind her of the actions she needed to take. On February 18, 2004, Mr. Wood decided to terminate Ms. Stough's employment based on her inability to manage the Hotel properly and the failure by the hotel of its quality assurance inspection that day. This was the forth time the hotel received a below average grade on an inspection since December 2003.

## ANALYSIS AND DISCUSSION

The facts surrounding the series of events clearly show that there is no evidence of discrimination in compensation based on Complainant's gender, and no evidence is cited by Complainant in support of her allegation. Complainant experienced performance deficiencies soon after her promotion to General Manager. In light of her apparent inability to handle the responsibilities of the position, Respondent had no intention of increasing her compensation. When the decision was made to strengthen the management team for the Hotel, Respondent hired an individual who was more qualified, better educated and more experienced than Respondent.

## CONCLUSION

For the reasons stated above, there is no evidence of any discrimination in compensating Complainant. This is a case of poor job performance and Complainant's failure to properly manage the Hotel under he supervision. While other General Managers at similar Jameson Inns were paid more than Complainant, a valid business decision was the reason for that disparity, not her gender. Respondent's reasons for paying Mr. Fetner the same salary it paid Complainant was also based on valid business reasons. Complainant's poor job performance resulted in her salary level being maintained at a constant level. Her poor performance did not require Respondent to refrain from adhering to its new compensation policy when hiring new employees such as Mr. Fetner. Based on the foregoing, Kitchin respectfully requests that the Charge of Discrimination filed against it by Complainant be dismissed as not being based on good cause. Please call me if I can provide you with any additional information.

Very truly yours,

Steven A. Curlee

SAC:sc

Jameson-0279