IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **BELINDA STOUGH,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO.: |
| **JAMESON INN, a company owned** ) | 3:05cv421-W |
| **and/ or operated by KITCHIN** ) | |
| **HOSPITALITY, LLC,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS PORTIONS OF FIRST AMENDED COMPLAINT**

**I.     Introduction**

This is a Title VII gender discrimination and Equal Pay Act case. The plaintiff, Belinda Stough, worked for the defendant at its Alexandar City location from May of 1999 until she was terminated on May 18, 2004. She held the General Manager position at the Alexander City Jameson Inn from May of 2000 until her termination. After her termination, the plaintiff filed an EEOC Charge asserting gender discrimination and retaliatory termination. In its EEOC position statement, the defendant admitted it paid the plaintiff a lower salary than its other general managers but claimed it had a business justification for her low salary: "While other General Managers at similar Jameson Inns were paid more than Complainant, a valid business decision was the reason for that disparity, not her gender." (Def EX 6 p. 3). In its position statement, the defendant tried to justify the plaintiff's low salary by pointing to specific evaluations, inspections and disciplines that the

1

plaintiff received during her employment.

Through this Motion the defendant now seeks to prevent the plaintiff from claiming that the defendant discriminated against her in wages in comparison to other General Managers, and that the defendant discriminated against her in evaluations, inspections and disciplines.  The defendant asserts these claims must be dismissed because they were outside the scope of the EEOC's investigation, despite the fact that the defendant itself put all of these issues before the EEOC through its own submission.

For the reasons set forth below, the defendant's motion to dismiss is due to be denied.[1]

**II.       Confusion Over What the Defendant Is Asking this Court to Do**

The defendant has moved to dismiss the following paragraphs from the plaintiff's complaint on grounds that the plaintiff failed to exhaust her administrative remedies with the EEOC:

> 4.      The plaintiff, Belinda Stough, is a female citizen of the United States and a resident of the State of Alabama.  The plaintiff was hired by the defendant in May of 1999, and she was discharged by the defendant on May 18, 2004.[2]
>
> 7.      During the plaintiff's employment, the defendant discriminated against her in evaluations, inspections, staff assignments, wages and other terms, conditions and privileges of her employment.
>
> 8.      The plaintiff's supervisor subjected the plaintiff to a hostile work environment because of her female gender through comments,

---

[1] As set forth below, the plaintiff concedes that she has no sexual harassment claim, her complaint clearly makes no sexual harassment claim, and she has repeatedly told the defendant the same.  The plaintiff further states that she seeks no relief for her terms, conditions and privileges discrimination allegation.

[2] The defendant has not stated and the plaintiff does not understand why the defendant wants this paragraph dismissed from the complaint.

>touchings, and other actions.
>
>20. The defendant discriminated against the plaintiff because of her female gender in wages, discipline, evaluations, inspections, termination and other terms, conditions and privileges of employment.

(See Def. Brf. p. 1).

The defendant spends the bulk of the body of its brief arguing that the plaintiff can not assert a sexual harassment claim, but the defendant also mentions that the plaintiff's Title VII pay claims that she was paid less than all the other general managers are not properly before this Court. (Def. Brf. pp. 7, 11).

However, at the end of its brief the defendant asks for certain claims to be dismissed, but does not mention the plaintiff's Title VII pay claims:

>Defendant requests that Plaintiff's allegations against Jameson alleging a hostile work environment, discriminatory evaluations, inspections, staff assignments, sexual comments and sexual touching be excluded from the scope of Plaintiff's Complaint, and that plaintiff not be allowed to litigate these issues in this matter.

Arguably, any contradictory and ambiguous requests in the defendant's brief should be read in the plaintiff's favor; however, out of an abundance of caution, the plaintiff will address everything the defendant is asserting should be excluded.

### III. The Plaintiff Has Repeatedly Told the Defendant She Is Not Asserting a Sexual Harassment Claim And She Now Tells this Court the Same

The plaintiff has told the defendant orally and in writing that the plaintiff is not asserting a sexual harassment claim. (See Exhibit A – January 20, 2006 e-mail). The plaintiff's complaint puts three (3) Counts before this Court: Count I – Sex Discrimination in Violation of Title VII; Count II – Retaliation in Violation of Title VII; and Count III –

3

Violation of the Equal Pay Act. (See Plaintiff's First Amended Complaint). There is no sexual harassment count stated in the plaintiff's complaint.

The plaintiff is not asserting a sexual harassment claim because she never complained about her District Manager, Charles Woods, sexually harassing her. However, the defendant has designated District Manager Woods as either the sole decision-maker or one of the decision-makers who determined the plaintiff's salary and decided to terminate the plaintiff. The fact that District Manager Woods made inappropriate sexual comments to the plaintiff and subjected her to unwanted touchings is certainly evidence of his own discriminatory attitude towards females. Indeed, if this was an age discrimination case, and the decision maker had subjected the plaintiff to an ageist hostile environment through comments, the plaintiff would include that as part of her factual allegations even though there is no relief available for a hostile age environment claim. The plaintiff is entitled to allege, and should allege, factual allegations that show the decision maker's discriminatory animus, and that is all the plaintiff has done here. It is a mystery to the undersigned counsel why the defendant wants a pertinent factual allegation stricken from the complaint because most defendants would welcome a complaint that shows the defendant that its designated decision maker harbors a bias against females.

**IV.    The Liberal Title VII Administrative Exhaustion Rules**

While the defendant correctly recites the general rule that claims under Title VII must be first filed with the EEOC before a plaintiff may pursue a civil cause of action, the defendant fails to recognize what is encompassed in the scope of an EEOC charge.

The seminal administrative exhaustion case in this Circuit is *Sanchez v. Standard*

*Brands*, Inc., 431 F.2d 455 (5th Cir. 1970). In rejecting the defendant's position that the plaintiff failed to exhaust her administrative remedies because she failed to state all of her claims in her complaint in her EEOC Charge, the Court set forth its liberal interpretation of the relationship between a complainant's EEOC Charge and what ultimately ends up in the federal complaint. The Court began its analysis "with a reiteration of our conviction that procedural technicalities are not to stand in the way of Title VII complainants. . . .It is more important that pleading rules be relaxed in the decidedly informal atmosphere of Title VII." *Id*. at 465. As the Court analyzed the process of filing an EEOC Charge and the subsequent agency investigation, the Court rejected the notion that the face of the complainant's EEOC Charge dictates what the complainant can allege in her federal complaint. Rather, the Court focused on the investigative process itself to determine the strictures of the eventual federal complaint:

> Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation. Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Id*. at 466.

Since *Sanchez* set forth this liberal administrative exhaustion doctrine, the Eleventh Circuit has steadfastly maintained that the fact that a complaint is not succinctly set forth in an EEOC charge does not stand for the proposition that such a claim is *per se* barred from litigation. In *Griffin v. Carlin* the Eleventh Circuit reiterated that "The judicial complaint is limited to the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." 755 F.2d 1516, 1522 (11th Cir.1985).

*See also*, *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.1989) ("One such area in which we have recognized that strict compliance with Title VII is unnecessary is where the plaintiff has filed a charge with the EEOC, but in her judicial action the plaintiff raises related issues as to which no filing has been made.")  Courts following *Sanchez* have applied its holding to cover claims regarding individual comparators who were not specifically mentioned in the plaintiff's EEOC charge.  *See*, *e.g.*, *Gerhart v. Boyertown Area School District*, 2002 WL 31999365, *6 (E.D. Pa. 2002)("Though Plaintiff never mentioned this comparator in her administrative charges or in her Complaint, we will consider the comparator, since it is our objective to give Plaintiff ever opportunity to create a triable issue of fact at summary judgment")(*citing Sanchez* at 466).

    The only three published cases cited by the defendant actually support the plaintiff's position that her claims are properly before this Court.  One of those case cited by the defendant is *Sanchez v. Standard Brands*, Inc., 431 F.2d 455 (5th Cir. 1970), which is discussed in the above paragraphs.  The defendant also cites this Court to *Gregory v. Georgia Department of Human Resources* 355 F.3d 1277 (11th Cir. 2004).  In that case, the Court permitted the plaintiff to proceed with her retaliation case even though she never checked the retaliation box in the charge.  In allowing the plaintiff to proceed with a retaliation complaint, which was not checked in her charge, the Court reasoned as follows:

> The ultimate act that she complained about was that she was terminated. At the point at which she filed the charge, she "believe[d]" that she was terminated because of her race and sex. She set forth the relevant dates of discrimination in the charge, as well as the reasons why she believed she was terminated.  Although not clear in the record, the EEOC presumably investigated, at least in some fashion, the possible reasons why Dr. Gregory was terminated, growing from her initial "belief" that it was because of her race and sex.  Indeed, there could be various permutations of non-legitimate

reasons why an employee is ultimately terminated. In Dr. Gregory's situation, for example, it could be that race and sex were the only reasons, as she initially believed, why she was terminated. It could also be, however, that Dr. Gregory was terminated *in retaliation for* having complained about Dr. Fuller's disparate treatment of her, *inter alia,* during physician scheduling and patient assignments. . . .

. . . **The facts alleged in her EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination.** That is, she stated facts from which a reasonable EEOC investigator could have concluded that what she had complained about is retaliation because of her complaints of Dr. Fuller's disparate treatment to the hospital's administration. Specifically, shortly after being subjected to certain allegedly discriminatory acts, she was terminated. An EEOC investigation of her race and sex discrimination complaints leading to her termination would have reasonably uncovered any evidence of retaliation. . . . .

*Id*. at 1280. (emphasis added)

The only other published decision cited by the defendant, *Alexander v. Fulton County, Ga.,* 207 F.3d 1303 (11th Circuit 2000), further supports the plaintiff's position by allowing the plaintiffs in that case to proceed with claims not mentioned in the EEOC charges.

It is true that several claims of racial discrimination asserted in Plaintiffs' complaint--denial of access to promotional exams, reclassifications, and transfers--were not specifically mentioned in the EEOC charges. However, these claims are sufficiently similar to the promotions and job assignment claims--all involve the allegedly race-based rejection of Plaintiffs for desired positions within the Sheriff's Department--to be fairly characterized as arising out of similar discriminatory treatment to that specifically alleged before the EEOC.

*Id*. at 1333. The two non-published opinions cited by the defendant are inapplicable to the

facts before this Court.[3]

### V. Through the Defendant's Own Submissions to the EEOC, the Plaintiff's Complaints are Properly Before this Court

The only paragraph the defendant asks this Court to dismiss that constitutes claims asserted by the plaintiff is paragraph number 20 which reads as follows:

> The defendant discriminated against the plaintiff because of her female gender in wages, discipline, evaluations, inspections, termination and other terms, conditions and privileges of employment.[4]

Indeed, the remaining paragraphs, 4, 7 and 8 are merely part of the plaintiff's factual allegations section of the complaint; they are not claims under which the plaintiff seeks relief. Focusing on paragraph 20 of her complaint, the plaintiff complains that (1) defendant paid her lower than other general managers; (2) issued her discriminatory disciplines, (3) issued her discriminatory inspections evaluations, (4) issued her discriminatory inspections, (5) made a discriminatory termination decision and (6) she was discriminated against because of her gender in other terms, conditions and privileges of employment.

All these Title VII claims are properly before this Court because those claims were

---

[3] In *Lambert v. Alabama Dept. of Youth Services* 150 Fed.Appx. 990 (11th Cir. 2005), the Court affirmed the dismissal of the plaintiff's claims of being forced to wax floors and being denied sick leave, because his EEOC Charge only stated he was being suspended for being disruptive and transferred to a less desirable shift. The plaintiff in that case put forth no evidence that those claims were before the EEOC, indeed he never directly addressed the defendant's failure to exahust administrative remedies as the plaintiff has done here.

In *Green v. Elixir* 152 Fed.Apx 838, (11th Cir. 2005), another case not selected for publication, the plaintiff's EEOC Charge mentioned nothing about the plaintiff being racially harassed; therefore, the Court granted summary judgment on the plaintiff's harassment claim. As the plaintiff has already stated in this brief and to the defendant on numerous occasions, he is not asserting a hostile work environment claim.

[4] To simplify matters as much as possible and allow this case to go forward without any further delay, the plaintiff will concede that she is not pursuing any relief for being discriminated against in the terms, conditions and privileges of her employment.

reasonably expected to become part of the EEOC's investigation, **and they actually did become part of the EEOC's investigation through the defendant's own submission.** Interestingly, the defendant's brief points this Court to its position statement to show it only addressed the claims in the plaintiff's EEOC Charge.  However,  in defending the salary it paid to the plaintiff and its decision to terminate her, the defendant raised the very issues it is now trying to dismiss from the plaintiff's complaint.  The defendant itself brought the issues of discriminatory (1) disciplines, (2) evaluations  (3) inspections, and (4) discharge into the scope of the plaintiff's EEOC Charge when it wrote the following in its EEOC position statement:

> During her (the plaintiff's) tenure as General Manager of the Hotel, Complainant's work performance was not satisfactory on several occasions. She was given a written reprimand on June 17, 2003 for excessive absenteeism and for not notifying Mr. Woods of her absences. She was also given a reprimand on that same day for the Hotel having received its second consecutive poor score on a quality insurance inspection. On December 29, 2003, Mr. Woods wrote another corrective action notice to complainant regarding her poor scores on subsequent quality assurance inspections and inadequate training at the Hotel, both of which are the responsibility of the general manager.

(Def. EX 6  – EEOC Position Statement).  The defendant's assertion that the issues of discriminatory discipline, inspection, evaluation and discharge could not have reasonably grown out of the EEOC's investigation is contradicted by its own position statement, where it raised those very issues.

And, that same EEOC position statement also placed the salary of other General Managers around the country within the scope of the EEOC investigation.  In particular the defendant stated the following in its EEOC position statement:

> In late 2003, Respondent reviewed its compensation polices for the

9

> General Managers and Assistant General Managers at all of its Jameson Inns. This review resulted in plans to implement significant increases in the base salary of many of its General Managers and Assistant General Managers, such that a 60-room Jameson Inn the range of the base salary for the General Manager was increased in most locations to $26,000 to $32,000, and for Assistant Genearal Manager was increased in most locations to $18.000 to $24,000. The salary paid to any particular General Manager depended upon the hotel location, the tenure of the General Manager and the education and overall experience of the General Manager. Gender was not a factor. In fact, most of the Respondent's General Managers are female. In reviewing the compensation paid to Complainant, a decision was made not to adjust her salary due to her lack of experience and poor management results observed at the hotel. . .

(Def. EX 6 pp. 2-3)

If the issue of the plaintiff's salary in comparison to other general managers' salaries was not placed at issue by the plaintiff's EEOC Charge (a position that the plaintiff does not agree with), through the above paragraph the defendant definitely pulled that issue into the scope of the EEOC's investigation.

And, in the conclusion section of its response, the defendant erased any doubt that the salary of other General Managers was a reasonable outgrowth of the EEOC investigation. The defendant undisputedly placed the salary of other general managers within the scope of the EEOC investigation by claiming a valid business reason supported its decision to pay the plaintiff **less than other General Managers.** "While other General Managers at similar Jameson Inns were paid more than Complainant, a valid business decision was the reason for that disparity, not her gender." (Def. EX 6 p. 3).

In addition to the defendant placing all of these items into the scope of the plaintiff's EEOC Charge through its own submission to the EEOC, another factor supporting the plaintiff's position that her claims are properly before this Court is that when she filed her

10

EEOC Charge, she eluded to the fact that she, as the general manager, made the same salary as her newly-hired assistant manager because that was the only hard evidence she had at the time in support of her discriminatory pay claim. Indeed, it was not until after she filed her lawsuit in federal court and the defendant responded to her counsel's discovery requests did the plaintiff realize the extent of the defendant's discrimination. (EX B – Stough Depo. p. 117 – 118). The comparator evidence which plaintiff has received thus far shows that plaintiff was underpaid as compared with her male counterparts. Plaintiff anticipates that further discovery may reveal additional disparities. Any reasonable EEOC investigation would have uncovered that fact, even if the defendant had not brought that up in its own position statement to the EEOC, as it did here.

### VI.     Conclusion

Plaintiff's counsel anticipates that were he to begin deposing defendant's witnesses, defendant would seek to prohibit its witnesses from answering questions about the claims at issue in this Motion, and particularly about plaintiff's comparators for her pay discrimination claims. Because the disposition of the instant Motion will likely alleviate the need for plaintiff having to depose defendant's witnesses twice should defendant's counsel instruct deponents not to answer questions about the claims which are the subject of this Motion, plaintiff respectfully requests that the Court give expedited consideration to the instant Motion. Based on the foregoing, defendant's Motion should be denied, and plaintiff should be permitted to go forward with those claims asserted in her Amended Complaint.

Respectfully submitted,

 s/Jon C. Goldfarb
Jon C. Goldfarb (ASB-5401-F58J)
Maury S. Weiner (ASB-8856-W86M)
Kell A. Simon (ASB-0214-O77K)
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS & QUINN LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

Gary R. Kessler, Esq.,
Irvin, Stanford & Kessler
3060 Peachtree Road
Suite 1050
Atlanta, Georgia 30305
Telephone No.: (404) 237-1020
Facsimile No.: (404) 237-1047

on this the 17th of March, 2006.

 s/Jon C. Goldfarb
 OF COUNSEL