**Jon Goldfarb**

---

**From:** Jon Goldfarb

**Sent:** Friday, January 20, 2006 8:21 AM

**To:** 'Gary R. Kessler'

**Cc:** Maury S. Weiner; Lisa M. Sandlin

**Subject:** RE: Stough v. Jameson

Gary:

I apologize for not resopnding to that December 14th letter, but I just saw it for the first time yesterday, after you mentioned it. I noticed you indicate you reviewed the EEOC file in your December 14, 2005 letter. I have not seenthat file. I would like to have the same opportunity as you to review her entire EEOC file before I enter into any agreement. In addition, can you please present me with some binding authorit showing I have to remove those factual allegations from her complaint. I don't even understand why you are making an issue of this because, as Maury stated to you previosuly, she is not asserting a sexual harassment claim. Those facts are evidence of how she was discriminated against as a female, and further evidence of discrimination in the terms, conditions and privileges of her employment. Concerning the interrogatories, she has answered them as fully as she can at this pre-discovery time. She knows of nothing else. There are no work product documents or attorney client privilege documents. Concerning the requests produce, there are no documetns that we are witholding pursuant to any privilege. I am working on seeing if I can get those dates for you, and I should know very soon. Assuming I am able to get complete discovery responses from you, do you have dates that same time period for me to take depositions of the decision makers and a few others in this case?

---

**From:** Gary R. Kessler [mailto:gkessler@isklaw.com]
**Sent:** Thursday, January 19, 2006 5:47 PM
**To:** Jon Goldfarb
**Subject:** RE: Stough v. Jameson

both the objections to the interrogatories and the sexual harassment allegations which were not raised in either the EEOC charge or the first complaint. We want an agreement that they will be removed and that they will not be part of the lawsuit. To my knowledge these allegations were never raised before you all became involved. The allegations are untimely, there was no EEOC investigation concerning these and therefore no exhaustion of administrative remedies.

---

**From:** Jon Goldfarb [mailto:JGoldfarb@wcqp.com]
**Sent:** Thursday, January 19, 2006 6:01 PM
**To:** Gary R. Kessler
**Cc:** Lisa M. Sandlin
**Subject:** RE: Stough v. Jameson

I am completely booked up on Friday. Sorry. I will have to get back to you on those dates because I believe I have other depositions scheduled. What do you want to discuss concerning the 12/14 letter?

---

**From:** Gary R. Kessler [mailto:gkessler@isklaw.com]
**Sent:** Thursday, January 19, 2006 4:40 PM
**To:** Jon Goldfarb
**Subject:** Stough v. Jameson

Jon--we are ready to produce documents to you in this case and a number constitute confidential information (salaries, personnel file of Fetner, etc). We will forward to you a confidentiality

B

him. And I said wait a minute I want to see and I leaned over and I did not see him kiss her but I did see them close together.

**Q It's Betty Sutton?**

A Yes, sir. I'm sorry I did not know the last name. And I just feel like that I just didn't fit because I didn't do things that were inappropriate. I didn't drink. I didn't go to bars. I didn't do that kind of stuff.

**Q Any other reasons why you believe that you were picked on because you were a female?**

A The pay.

**Q Okay.**

A The discrimination on the pay due to the fact that is when Mark Fetner came there he made the same pay I did. I was a manager. He was an assistant manager. And later on I did find out in talking with my attorney that --

MR. GOLDFARB: Don't tell him

what I said.

A Okay. I seen the document --

MR. KESSLER: It won't be in evidence then.

A I'm sorry. I seen the documents of the pay roster and I seen where there was male managers in our district that was making higher pay that had come to work later than I did.

**Q Did you see also that female managers were making more than you?**

A I seen that Ms. Sutton made more than I did.

**Q Did you see that Ms. Ellis made more than you did?**

A Ms. Ellis made more but she made less than what Ms. Sutton made and I feel that had --

**Q Had to do with what?**

A The relationship with Charles and Ms. Sutton.

**Q So you believe that based on by seeing them close together on an**

**occasion and who was this woman who you were with?**

A Excuse me. Ms. Ellis.

**Q Ms. Ellis said that they kissed and you believe that because of this -- what you believe was a relationship between Charles Woods and Betty Sutton that's why you made less money?**

A I believe there was a relationship that I did not have with Charles that she had with Charles. There were occasions that she came to my property when Charles was on my property and that I did not understand why she came to the property but there were several occasions that she did. I feel like that I was discriminated against because I didn't have that kind of a relationship with him.

**Q What other kind of facts do you believe there are which demonstrate, in your view, that you were being treated**

**differently or discriminated against because you were a woman?**

A Remarks. Like I said before the remarks about some women can't handle the work force. They need to stay home and be mothers. Some of the other remarks I had had made previously. Just things changed. After I went to work there things changed. I don't know exactly why. When I first went to work there things went great. All of a sudden things changed and I feel like it had to do with the fact that I'm a female and I felt like I was discriminated against pay wise. It just come to the point that it became a hostile work environment and I feel that's all to do with the fact that I'm a female and I made a remark to Mr. Woods about the reason why I was fired is because I felt like that I was being discriminated against in pay because I was a female and Mr. Fetner was a male and he was making the same amount