IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| BELINDA STOUGH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:05cv421-W |
| | : | |
| JAMESON INNS, a company owned or operated by KITCHIN HOSPITALITY, LLC, | : : : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

I.  INTRODUCTION

Plaintiff Belinda Stough's three-count First Amended Complaint alleges sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* (Count I), retaliation in violation of Title VII (Count II), and pay discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (Count III).  As Defendant Jameson Inns ("Jameson") shows below and in the accompanying *Jameson's Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried*, there is no genuine dispute as to any material fact, and Jameson is entitled to judgment as a matter of law pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

## II. STATEMENT OF FACTS

Please refer to *Jameson's Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried*, filed simultaneously herewith. Any additional facts helpful to the discussion below will be cited and supported herein.

## III. ARGUMENT AND CITATION OF AUTHORITY

### A. Summary Judgment Standard

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence

in support of some element of her case on which she bears the ultimate burden of proof. *Id*. at 322-324.

Once the moving party has met its burden, Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence of the non-movant, however, must be believed, and all justifiable inferences drawn in her favor. *See* Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the summary judgment motion, the district court must grant summary judgment if there is no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. This summary judgment rule is to be applied in employment discrimination cases as in any other case. Chapman v. AI Transport, 229 F.3d 1012, 1026 (11th Cir. 2000) (*en banc*).

B.   Count I: Stough's Claim Of Title VII Sex Discrimination Fails

1.   The analytical framework

When proving a case of disparate treatment based on sex, the plaintiff bears the burden of showing that her employer intentionally discriminated against her based on her sex. Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997). Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of sex by using circumstantial evidence of intent, the district court applies the framework first set out by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. 411 U.S. at 802. If the plaintiff establishes her *prima facie* case, the employer then has the burden of producing a legitimate, non-discriminatory reason for the adverse employment action complained of. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 1010 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff must then demonstrate that the proffered reason was a pretext for the employer's intentional discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. at 256; Combs v. Plantation Patterns, 106 F.3d 1519, 1528

(11th Cir. 1997). A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

      2.     <u>Jameson has produced a legitimate, non-discriminatory reason</u>

For purposes of this motion, Jameson assumes without conceding that Stough can establish her *prima facie* case of sex discrimination. Jameson has produced ample evidence of its legitimate, non-discriminatory reason for its treatment of Stough: she consistently exhibited performance problems, particularly having to do with the cleanliness of her hotel's guest rooms. Jameson gave Stough numerous warnings and opportunities to improve her performance, but Stough failed to do so. Stough's employment was terminated when she received a second consecutive quarterly "Failure" grade on the QA inspection of her hotel. Jameson has carried its burden at this step of the analysis.

      3.     <u>Stough has no evidence of pretext</u>

Stough has adduced no evidence that could lead a reasonable trier of fact to conclude that Jameson's legitimate, non-discriminatory reason was pretextual for intentional sex discrimination. She has pointed to no evidence

that Woods treated his male GMs more leniently or failed to discipline them for similarly unacceptable QA scores. Moreover, the evidence shows that Jameson has terminated the employment of a number of other GMs, both male and female, for performance problems.

This Court made an observation in a recent case that applies with equal force to Stough's case:

> Boiled down to its essence, plaintiff's complaint regarding his terms and conditions of employment is that [his manager] was a nit-picking, overbearing, unpleasant micro-manager who unfairly criticized plaintiff's performance . . . . However, Title VII does not provide a right to a pleasant work environment, but only a right to a workplace that is free of discrimination.

Toney v. Montgomery Job Corps, 2006 WL 691188, *12 (M.D. Ala. 2006) (Walker, Mag. J.).[1] Like the plaintiff in Toney, Stough thought that Woods' criticisms of her performance were unfounded and unfair. Stough also thought that Woods did not like her because she did not like to drink or go to bars.[2] There is simply no evidence here that Woods or Jameson intentionally discriminated against Stough because she is a female.

---

[1] *See also* Armstrong v. Flowers Hospital, 33 F.3d 1308, 1317 (11th Cir. 1994) ("Title VII simply does not require employers to treat their employees with kindness").

[2] Stough's position presents a tacit argument that being a teetotaler is a protected category under Title VII. Jameson is fairly certain this is not the case.

"Because the plaintiff bears the burden of establishing pretext, [s]he must present significantly probative evidence on the issue to avoid summary judgment." Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (internal quotations and citation omitted). Stough summed up her "significantly probative" evidence as follows:

> I just felt like that I was being picked on because of the fact of being a woman. And I felt like I did not fit in the little group and the little clicks because there was [sic] things that I did not do. There was [sic] things that I did not agree with within the company, within our district. I felt as a woman I was being discriminated against. I felt like nothing I did was good enough. And I felt this way because of conversations we had. There were remarks made that some women can't handle the work. They need to be home and be mothers. I just felt like I didn't belong. I felt like I did not fit because I didn't fit into the little clicks. I didn't participate in things that I did not agree with such as when we had managers meetings. A lot of the managers, district managers in our district would get together and go drinking and things and I didn't do that kind of stuff and I just felt like I was – I didn't fit. I didn't belong and I was being discriminated against because of that fact that I was a woman and that I did not participate in things that I did not agree with.

(Stough Dep. p. 115, l. 3 – p. 116, l. 9). Stough went on to compare herself to another, higher-paid female GM, Betty Sutton, and opined that Sutton, unlike Stough, "fit in" because Sutton had a closer personal relationship with Woods (Stough Dep. p. 116, l. 14 – p. 117, l. 11).[3]

---

[3] Stough testified another female GM told her she had seen Sutton and Woods kiss on one occasion at a district meeting (Stough Dep. p. 116, l. 14 –

These conclusory allegations, plus the Fetner pay issue, addressed below, form the heart of Stough's claims. "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions.'" Young, 840 F.2d at 830, quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir. 1987).

Accordingly, Jameson is entitled to summary judgment on Count I of Stough's First Amended Complaint. Jameson respectfully prays that this Court so rule.

    C.    Count II: Stough's Claim Of Title VII Retaliation Fails

Stough claims that her employment was terminated on February 18, 2004 in retaliation for her complaining to Woods on February 14 or 15 that Fetner was making the same base salary as she was. The analytical framework for such a claim is the same as that for her sex discrimination claim, i.e., the plaintiff establishes a *prima facie* case, the defendant produces evidence of a legitimate, non-discriminatory reason, and the

---

p. 117, l. 4). This is, of course, inadmissible hearsay. Woods testified that Sutton once kissed him on the cheek to thank him for a teddy bear Woods and his wife had given her when her son died (Woods Dep. 277, l. 16 – p. 278, l. 20).

plaintiff demonstrates pretext.  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).

The plaintiff's *prima facie* case is established by showing that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is some causal link between the two events.  *Ibid*.  Stough cannot establish the first element of her *prima facie* case because her complaint to Woods about Fetner's salary was not a statutorily protected expression.  As discussed below in connection with Stough's Equal Pay Act claim, a claim of sex discrimination in pay is not actionable if the plaintiff and her male comparator receive the same pay.  Thus, a complaint that they are receiving the same pay is not a statutorily protected expression.  The scenario is analogous to retaliation cases under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*., in which the plaintiff claims she was discharged for seeking leave that was not FMLA-qualifying.  Under such circumstances, the Eleventh Circuit has said that the retaliation claim fails because the request for the leave was not a statutorily protected expression.  *See, e.g*., Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000).  Stough has thus failed to establish her *prima facie* case of Title VII retaliation.

1. Jameson has produced a legitimate, non-discriminatory reason

Assuming *arguendo* that Stough can establish her *prima facie* case, *see, e.g.*, Farley v. Nationwide Mutual Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999) (causal link requirement is construed broadly and can be established merely by temporal proximity to the adverse employment action)[4], Jameson was not required to suspend ongoing progressive discipline against Stough in the wake of a pay discrimination complaint. Stough has adduced no probative evidence that the "Failure" score on the QA review of February 18, 2004 was illegitimate or unfounded in any way. Jameson has satisfied its burden of producing a legitimate, non-discriminatory reason for its termination of Stough's employment in spite of her complaint of alleged pay discrimination.

2. Stough has adduced no evidence of pretext

Stough has no evidence that her alleged complaint to Woods about Fetner's salary played any part at all in Woods' decision to terminate her employment. She was already on her last legs with her job and she knew it.

---

[4] *But see* Clark County School District v. Breeden, 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (where adverse employment action was contemplated before plaintiff engaged in protected activity but not carried out until afterward, "no evidence whatever of causality" is shown).

-10-

Stough attempts to demonstrate pretext by contending that she really was a satisfactory employee and Woods was unreasonable in his assessment of her performance. While she does not dispute that she received the progressive disciplinary actions Woods gave her, she claims that they were unfair. The Eleventh Circuit has a ready answer to this kind of argument:

> In analyzing claims like [Stough's], we must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees. The factual issue to be resolved is not the wisdom or accuracy of [the employer's] conclusion that [Stough] was an unsatisfactory employee. We are not interested in whether the conclusion is a correct one, but whether it is an honest one. Like all Title VII cases where pretext is an issue, the question the factfinder must answer is whether [the employer's] proffered reasons were a coverup for a discriminatory decision. We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.

Rojas v. State of Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) (citations and internal quotations omitted). *See also* Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions . . . . Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior") (citations and internal quotations omitted).

The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of her performance; thus, where the

employer produces documentary evidence of poor performance, an employee's assertions of her own good performance are insufficient to defeat summary judgment absent other evidence. Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997). The fact that Stough believes her performance was satisfactory and that Woods' criticisms of it were unfair is thus irrelevant to the inquiry into pretext.

Accordingly, the undisputed record evidence and the analytical framework show that Jameson is entitled to summary judgment on Count II of Stough's First Amended Complaint. Jameson respectfully prays that this Court so rule.

### D.   Count III: Stough's Equal Pay Act Claim Fails

The Equal Pay Act ("EPA") provides in pertinent part:

> No employer having employees subject to any of the provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1). A plaintiff demonstrates a *prima facie* case of a violation of the EPA if the employer pays different wages to employees of different sexes for equal work on jobs requiring equal skill, effort, and responsibility. Irby v. Bittick, 44 F.3d 949, 954 (11th Cir. 1995).

       1.      The Fetner salary claim fails

Stough cannot establish an EPA violation based on Fetner's salary. Stough did not earn a smaller base salary than Fetner, she earned the **same** base salary as Fetner. This does not constitute an EPA violation. Snider v. Belvidere Township, 216 F.3d 616, 619-620 (7th Cir. 2000) (when male with less experience and seniority is hired at same wage as female plaintiff's, no EPA violation occurs). Moreover, it is undisputed that Stough, as a GM, had the opportunity to earn bonuses while Fetner, as an AGM, did not. Stough thus had the potential, should her performance warrant it, to earn significantly more than Fetner, whose pay was limited to his base salary. No EPA violation is established with Fetner as Stough's comparator.[5] Accordingly, Jameson is entitled to summary judgment on

---

[5] Stough alleges in her First Amended Complaint that other male GMs at other Jameson locations were paid more than their AGMs (1st Amd. Complt. ¶ 10). Even assuming this to be true, this would not constitute an EPA violation but might be cognizable as part of her Title VII gender discrimination claim. Stough has adduced no evidence, however, that this was the result of intentional discrimination. Woods testified without dispute

Count III of Stough's First Amended Complaint as concerns the comparison to Fetner. Jameson respectfully prays that this Court so rule.

### 2. The salary claim of other male GMs fails

Stough also claims in her First Amended Complaint that she was paid a lower salary than similarly situated male GMs (1st Amd. Complt. ¶ 11). The one male GM she specifically points to in this regard is Jim Goodman, the GM at the Auburn, Alabama property, but Stough concedes she knows nothing of his qualifications, education or experience (Stough Dep. p. 230, ll. 1-17). Moreover, it is undisputed that GM salaries can vary greatly and are determined by the individual's experience, the market where the property is located, and the revenues of the property. These are factors "other than sex" that demonstrate Stough was not paid in violation of the EPA.

Furthermore, Goodman and any other male GMs to whom Stough seeks to compare herself worked at a different establishment than Stough, and thus they are not proper comparators under the EPA. The EEOC's regulations in this regard make clear that the term "establishment" as used in the EPA "refers to a distinct physical place of business rather than to an entire business or 'enterprise'." 29 CFR § 1620.9(a). *See also* Meeks v.

---

that the salary Stough was making played no part in his decision to hire Fetner at an annual starting salary of $21,000. Moreover, it is undisputed that Stough's salary, like everyone else's, had been frozen since the beginning of 2002.

Computer Associates Intern., 15 F.3d 1013, 1017 (11th Cir. 1994) (there is a presumption that multiple offices do not constitute a "single establishment" unless unusual circumstances are demonstrated).

Accordingly, Jameson is entitled to summary judgment on Count III of Stough's First Amended Complaint as concerns the comparison to other male GMs. Jameson respectfully prays that this Court so rule.

IV.     CONCLUSION

This is one of those meritless employment discrimination cases that choke the federal docket and should be dismissed with a summary judgment. Jameson respectfully prays that this Court so rule.

This the twenty-sixth day of May, 2006.

> Respectfully submitted,
>
> IRVIN, STANFORD & KESSLER, LLP
>
> By:  /s/ Gary R. Kessler
> Alabama Bar No. ASB-0251-L52G
> 3060 Peachtree Road, N.W.
> Suite 1050
> Atlanta, Georgia  30305
> 404-237-1020 (office)
> 404-237-1047 (facsimile)
> gkessler@isklaw.com
> COUNSEL FOR DEFENDANT

CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing *Memorandum Of Law In Support Of Defendant's Motion For Summary*

*Judgment* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

    Angela J. Hill, Esq.
    Jon C. Goldfarb, Esq.
    Kell Ascher Simon, Esq.
    Maury Steven Weiner, Esq.

This the twenty-sixth day of May, 2006.

                                                /s/ Gary R. Kessler